**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
May 15, 2012

Lyle W. Cayce
Clerk

No. 11-60116

RENEE SUMMERS AKERS,

Plaintiff - Appellee

v.

HINDS COMMUNITY COLLEGE,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:08-CV-161

Before REAVLEY, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:[*]

The judgment of the district court is reversed and the case is dismissed for the following reasons.

The plaintiff, Renee Akers, was a popular instructor, primarily of courses on economics, for 24 years until the Fall semester in 2006. She blames the college for ending her teaching that subject, and the jury has found in her favor. Ms. Akers' damages and the several complaints about her treatment are the

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

consequence of her belief that the termination of her teaching this subject was caused by the college in retaliation for her participation in a 2002 lawsuit.

This belief is unwarranted and contrary to the undisputed facts that the requirement of the accrediting Southern Association of Colleges and Schools was that a teacher of economics be required to have had 18 semester hours of graduate study in that subject. Akers had only six hours. That 18 hour requirement was stated in 2001 in the Association's publication on principles of accreditation. As the accreditation process began for Hinds College the requirement became a serious problem. The vice-president told the faculty at its convocation in January of 2006 that the teachers who lacked the hours of credit would have to take courses to meet the required standard. They could do that at the college with tuition borne by the college while teaching their other courses. More than 20 instructors were listed as failing the required credit in the subjects being taught. In February of 2006 when the department chair spoke to Akers about this problem and her lack of qualification to teach economics under Association rules, she refused to accept it as her problem. With her long and successful experience teaching economics and the accreditation having been awarded in prior years, she denied the necessity to change and made no application to take the college's invitation to take courses for more hours of credit. She blamed the department chair for being unethical and unfair for not allowing her to teach economics. The vice-president wrote in March of 2007 to remind the economics instructors of the availability of reimbursement for courses to increase their credits. Not until December of 2007 did Akers request that reimbursement to take 12 hours in the Spring. The college president denied permission because the load was too great. Akers filed this lawsuit in 2008.

This record leaves no question about the responsibility for Akers having to stop teaching economics. It was not the doing of the college because their

word always was that she was qualified to do that.  The Association insisted on the hours of graduate study.  The college had to accede, and Akers was not treated differently from all of the other instructors with this problem.

Akers also claims that her denial to be chair of the Business Administration Department was motivated by retaliation for her being named as a witness in the lawsuit that a co-instructor filed against the college in 2002. Three people filed for this position and William Ashley was selected.  Ashley was working on a Ph.D. degree in community college leadership, had taught in several colleges and also had managerial experience as an athletic coach.  Akers shows only her longer teaching hours and the personal belief of her superiority. No juror could reasonably regard her as clearly better qualified for the position with added administrative responsibility.  The retaliation claim is denied.  *See Moss v. BMC Software*, 610 F.3d 917, 923-26 (5th Cir. 2010).

Ashley's promotion was approved in May of 2006 by the vice-president and president of the college.  The nomination was made by Dean Kelly, and Kelly was a potential witness in the 2002 discrimination suit.  That suit was settled and never tried.  Kelly testified that he had no knowledge that Akers was to be an adverse witness until he was told by the lawyer in the current case.  Although the jury did not have to believe Kelly, there is no other evidence regarding Kelly's knowledge or enmity by Kelly or any other against Akers as a result of the 2002 lawsuit.

It follows that Akers could not prove a causal connection between her listing as a protected prospective witness in the earlier lawsuit and any adverse employment action by the college.  The district court should have granted defendant's motion for judgment as a matter of law at the close of the evidence since there was no legally sufficient evidentiary basis for a reasonable jury to

No. 11-60116

find for Ms. Akers.  Fed. R. Civ. P. 50(a); *Bryant v. Compass Group*, 413 F.3d 471 (5th Cir. 2005).

REVERSED and CASE DISMISSED.